IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CORRETJER V. PRINCIPAL LIFE INS. CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ENRIQUE J. CORRETJER, APPELLANT,

V.

PRINCIPAL LIFE INSURANCE CO., APPELLEE.

Filed October 18, 2016.    No. A-16-184.

Appeal from the Workers' Compensation Court: JOHN R. HOFFERT, Judge. Affirmed.

Jerry J. Milner, of Milner Law Office, for appellant.

Jill Gradwohl Schroeder and Michael D. Sands, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

INTRODUCTION

Enrique J. Corretjer appeals from an order of the Nebraska Workers' Compensation Court, which granted a motion for discovery sanctions filed by Corretjer's former employer, Principal Life Insurance Co. (Principal), and dismissed with prejudice Corretjer's claim for workers' compensation benefits. Because we find no abuse of discretion by the trial court, we affirm.

BACKGROUND

*Corretjer's Petition.*

On January 9, 2015, Corretjer filed the operative petition in the compensation court. He alleged that he sustained an accident and injury arising out of and in the course of his employment with Principal, which manifested itself on or about February 25, 2014. At the time of the accident,

- 1 -

Corretjer was employed as an individual investment specialist. Corretjer alleged that he sustained "epileptic seizures as a result of external stimuli occurring while in the course of his employment" with Principal. He sought an award of medical expenses, temporary and permanent disability benefits, vocational rehabilitation, and attorney fees and penalties.

*Initial Trial Date and Continuance.*

In May 2015, the compensation court issued notice that a trial on Corretjer's petition was set for August 26. The court subsequently continued trial to October 14 and ordered the parties to file pretrial statements, including, among other things, a list of expected witnesses, and to exchange exhibit lists.

*First Motion to Compel and Second Continuance.*

On September 23, 2015, Principal filed a motion for continuance of trial and to compel medical examination of Corretjer. In support of its motion for continuance, Principal alleged that Corretjer had been scheduled for an independent medical examination by Dr. Terry Davis and Dr. Rosanna Thurman on September 16 at Principal's request and that Corretjer had failed to appear. Principal stated that, due to the necessity of scheduling both examinations on the same day, it had been unable to reschedule the examination until October 16.

In support of the motion to compel, Principal alleged that Corretjer's attorney had been notified of the examination previously scheduled for September 16, 2015 with Davis and Thurman by letter on September 4 and that Corretjer failed to keep the September 16 examination appointment without reasonable cause. Principal alleged that Corretjer's attorney had been notified of the rescheduled examination by letter on September 22. Principal also stated that transportation to and from the rescheduled examination for Corretjer and one additional rider would be provided by Principal through a third-party vendor. Principal asked the compensation court to compel Corretjer to appear at the October 16 examination by Davis and Thurman and asked that Corretjer's petition be subject to dismissal if he failed or refused to attend.

On October 8, 2015, the compensation court entered an order granting Principal's motions. The court ordered Corretjer to attend the October 16 independent medical examination by Davis and Thurman and continued trial to January 20, 2016. The court found that if Corretjer failed or refused to submit to the examination, his petition "shall be subject to dismissal."

*Second Motion to Compel and Third Continuance.*

On November 17, 2015, Principal filed another motion for continuance of trial and motion to compel medical evaluation. Principal alleged that Corretjer had failed to appear for the October 16 examination with Davis and Thurman as ordered. Principal also alleged that, when it attempted to take Corretjer's deposition on October 14, he claimed to be unable to complete the deposition and that he subsequently gave notice he would be unable to attend the October 16 examination. Principal alleged that due to these events, it would need additional time to obtain medial opinions from Davis and Thurman and to take Corretjer's deposition. Principal asked the court to continue trial for 90 days. Principal also asked the court to order Corretjer to appear at a medical examination by Dr. Joel Cotton scheduled for January 4, 2016. It stated that Corretjer had been

notified by faxed correspondence on November 17 of the examination by Cotton scheduled for January 4. It asked that Corretjer's petition be subject to dismissal if he failed or refused to attend the examination by Cotton.

The compensation court granted Principal's motions on November 23, 2015. It ordered Corretjer to attend the January 4, 2016 examination by Cotton, with transportation again to be provided by Principal through a third-party vendor. As before, the court stated that if Corretjer failed or refused to submit to the examination his petition "shall be subject to dismissal with prejudice." The court ordered that trial scheduled for January 20 be continued to a telephonic status conference on March 24.

*Third Motion to Compel and Related Correspondence.*

On December 28, 2015, Principal filed a motion asking the compensation court to order Corretjer to attend a rescheduled medical examination by Davis and Thurman on January 22, 2016, with transportation to be provided by Principal through a third-party vendor. Principal again asked that Corretjer's petition be subject to dismissal if he failed or refused to attend. A hearing on the third motion to compel was set for January 14, 2016 in Lincoln, Nebraska.

In its third motion to compel, Principal outlined and attached copies of correspondence between the parties in October, November, and December, which we summarize briefly. On October 14, 2015, Corretjer's attorney asked Principal to move the compelled October 16 examination with Davis and Thurman to a new date and submit a new order to the court compelling Corretjer to attend. On November 17, Principal notified Corretjer of the rescheduled examination by Davis and Thurman set for December 18 and provided his attorney with a revised order compelling Corretjer's attendance. On November 25, Corretjer's attorney stated he had no objection to submitting the revised order to the court. On December 16, Corretjer's attorney requested that the examination by Davis and Thurman be continued "until such time as [Corretjer] feels capable of proceeding with this litigation." He also noted that counseling had been set up for Corretjer who would "like to have treatment for his anxiety before he proceeds with the defense examination." In its third motion to compel, Principal alleged that because it inadvertently failed to provide the compensation court with the revised order compelling attendance on December 18, it agreed to reschedule the examination. On December 17, Principal provided written notice that the December 18 examination would be rescheduled, and on December 18, it provided written notice that the examination was set for January 22, 2016.

*Additional Proceedings in January 2016.*

On January 6, 2016, Corretjer filed a motion seeking to change the venue for the hearing on Principal's third motion to compel from Lincoln to Grand Island. Corretjer's attorney alleged that a change of venue was proper because he had a scheduling conflict and because Corretjer's injury had been sustained in Grand Island. Alternatively, Corretjer asked for a continuance. In support of the request for a continuance, he alleged that his medical care and treatment terminated in February 2015 as he no longer had insurance; that after receiving approval for Medicaid, he submitted to a medical examination by a neurologist on December 2, but despite having requested these medical reports, his counsel had not received the records as of the date of his motion; and

that Corretjer "has reason to believe that he has been referred to [Dr.] Jerry Denton, a mental health counselor," who was currently out of state and would not begin counseling sessions until the end of January 2016.

A telephonic hearing on Corretjer's motion for change of venue or, in the alternative, to continue was held on January 6, 2016. The only exhibit received into evidence at this hearing was a copy of the curriculum vitae of Denton, the licensed clinical psychologist to whom Corretjer had been referred after his December 2015 neurologist appointment. In addition to discussing the venue change for hearing on the third motion to compel, to which Principal did not object, the parties discussed with the compensation court their concerns about the scope of the upcoming hearing on Principal's third motion to compel.

Principal's attorney expressed concern about being subjected to an evidentiary hearing on its third motion to compel while not being allowed to conduct proper discovery. She also alerted the court that Corretjer had failed to attend the compelled examination by Cotton on January 4 and that she intended to file a motion for sanctions.

Corretjer's attorney referenced an occasion in September 2015 when Corretjer was unable to participate in a "defense examination" because he started having seizures, noted that Corretjer also experienced a seizure during his deposition, and explained that he had some concern with "what to do as far as safely presenting my client for these purposes." He also told the court:

> [I]t's my opinion . . . that [Corretjer] needs some counseling. He has gotten to the point where he has an unreasonable fear about proceeding at this time. Every time he starts to talk about this incident, he starts having issues. Neurosis is what my concern is.

Corretjer's attorney further expressed concern that it was not in Corretjer's best interest from a health standpoint to proceed until he had some counseling and stated, "[M]y concern is . . . to have an evidentiary hearing because . . . the court certainly could dismiss this action with prejudice because my client will not submit to a defense examination." Corretjer's attorney was also "concerned about [Corretjer's] medical stability to even go through these kinds of examinations." Corretjer's attorney told the court that Corretjer's last treatment for the alleged work-related seizure disorder was in February 2015 and that he still had not received a report from the December 2015 neurologist examination. Finally, in connection with his alternate request to continue the hearing on Principal's third motion to compel, Corretjer's attorney expressed his preference "to wait until [Corretjer's] had some counseling before we even have this hearing on the motion to compel so that we just have a better idea of if it's going to be safe for him or not."

In connection with Corretjer's request for a continuance, the compensation court observed that it could only decide cases on the evidence it had before it, although it noted, "There is a history to this case, which is concerning, and . . . I'd like to know more."

*Motion for Sanctions and Hearing.*

On January 8, 2016, Principal filed a motion for sanctions, asking the compensation court to dismiss Corretjer's petition with prejudice. Principal alleged that Corretjer had failed to attend the compelled examination by Cotton on January 4, and, as with its third motion to compel, it

- 4 -

outlined and attached copies of the parties' correspondence exchanged in December 2015 after entry of the court's order compelling Corretjer to submit to the examination by Cotton.

In Principal's motion for sanctions, it indicated that on December 21, 2015, Corretjer's attorney sent correspondence requesting cancellation of the Cotton examination due to Corretjer's "unresolved anxiety regarding his current medical condition," which Principal declined to do via communications sent to Corretjer's attorney on December 28 and 29. Additional correspondence was exchanged by the parties' attorneys on December 30 and 31, and apparently some miscommunication ensued with respect to whether Corretjer intended to attend the examination by Cotton. Principal alleged in its motion for sanctions that when the arranged transportation company contacted Corretjer to pick him up, he stated he was not going to the January 4, 2016 appointment. On January 6, Principal's attorney received correspondence from Cotton stating that Corretjer did not present for the scheduled appointment.

On January 14, 2016, a telephonic hearing was held on Principal's third motion to compel and its motion for sanctions as well as Corretjer's motion for a continuance, which he indicated was directed at both of Principal's motions. In support of all three motions, Corretjer offered a copy of Denton's curriculum vitae, an affidavit from his attorney, an affidavit from his wife concerning communications she received about transportation for appointments in January, and his own affidavit. In support of its motion to compel, Principal offered copies of correspondence between the parties' attorneys and staff between November 17 and December 18, 2015. In support of its motion for sanctions, Principal offered copies of correspondence between the parties' attorneys and staff between December 21 and 31, 2015, a copy of Cotton's letter confirming that Corretjer did not attend the appointment scheduled for January 4, 2016, and affidavits from the individuals who had been responsible for arranging and providing the third-party transportation for the January 4 appointment.

In his affidavit, Corretjer stated that he had medical treatment for his February 2014 work-related injury with Dr. Colin Sanner, a neurologist, which was ended in February 2015 when his health insurance was cancelled upon termination of his employment. Corretjer stated that he traveled to Omaha for an examination by Davis and Thurman on September 16, but that he "experienced symptoms," just prior to the appointment, which prevented him from attending. He also stated that he was scheduled to give a deposition on October 15 and that within 10 minutes of starting the deposition, he "experienced a medical condition which resulted in calling emergency medical technicians" and transport to the hospital. Corretjer stated that upon being approved for Medicaid, he contacted Sanner's office for an appointment, obtained an appointment with Dr. Catherine Brignoni, a neurologist in the same office, and after seeing Brignoni on December 2, he was referred to Denton for his "unresolved anxiety." According to Corretjer, Denton was scheduled to return from vacation later in January and was willing to provide counseling for Corretjer "due to this unresolved medical condition." Corretjer also stated that he had advised he would not be attending the January 4, 2016 appointment with Cotton "due to [his] unresolved anxiety." He asked the compensation court to suspend discovery "until such time that I have an opportunity to meet with a counselor and submit to medical and psychological treatment for this condition."

Attached to Corretjer's affidavit were copies of emergency room reports, showing that he was transported to the hospital and treated for seizures on the date of his deposition. Also attached were notes from his examination by Brignoni on December 2, 2015. Corretjer reported to Brignoni that he had had seizures on three occasions, the first time in February 2014, the second time in July 2014, and the third time on the occasion of his deposition in October 2015. Corretjer's wife also reported that he was experiencing increased anxiety. During the examination, Brignoni noted that Corretjer appeared "very calm," however, "we talk about his work-related events, he gets very anxious and developed some form of anxiety with possible panic contributions. He has difficulty following through on completed sentences when this occurs." Brignoni recommended that Corretjer follow through on a previous recommendation by Sanner to see Denton and continue seizure precautions. She again noted that Corretjer had "some notable anxiety" during the visit. She recommended that Corretjer see a psychiatrist for the treatment of anxiety and depression and indicated that she would continue seeing Corretjer "with hopes of resolving his seizure concerns." She indicated she would be happy to provide any additional information to Corretjer or his attorney if necessary. Corretjer's attorney stated in his affidavit that he did not receive Brignoni's medical notes from the December 2 visit until January 7, 2016.

One of the exhibits offered by Principal in support of its motion for sanctions was a letter from Corretjer's attorney to Principal's attorney dated December 21, 2015. This letter was also referenced in the affidavit of Corretjer's attorney. In the December 21 letter, Corretjer's attorney stated:

> As you know, Mr. Corretjer is continuing to suffer from unresolved anxiety regarding his current medical condition. For this reason, my client has asked to cancel the defense examination with Dr. Cotton on January 4, 2016 until such time he is provided with counseling therapy to deal with his anxiety issues. As I further explained to you over the phone, I am requesting an evidentiary hearing to explain to the Court that Mr. Corretjer is not mentally prepared to proceed with the litigation due to the fact that he had a previous seizure while you were taking his deposition on October 14, 2015. Therefore, we are asking that we suspend the discovery process until such time as Mr. Corretjer is mentally prepared to proceed with his deposition and medical examinations. As you further know, this matter has already been presented to the Judge and I agreed to a continuance of the trial in this matter for this very reason. In addition, the Court did set this matter for a status conference on March 24, 2016 at which time I will again explain to the Court the basis for suspending the discovery proceedings as I have previously outlined above. Again, I apologize for any undue delay or hardship this may cause your client. However, I must place the mental health of my client above all else.

Principal's attorney replied on December 28, indicating that Principal felt it was being prohibited from gathering the information it needed to evaluate the claims alleged in Corretjer's petition, that Principal was not willing to voluntarily cancel the examination by Cotton and expected Corretjer to present for that examination, and that if Corretjer failed to appear, it would seek sanctions against him. The letter also advised that Principal was unwilling to agree that Corretjer had a seizure at the time of his deposition.

During the January 14, 2016 hearing, the compensation court inquired whether Corretjer had an appointment scheduled with Denton or "anyone else that could opine on this matter." Corretjer's counsel advised that a specific appointment had not been scheduled as Denton had not indicated the exact date at the end of January when he would return to his office. He stated further that while Denton was willing to "start over the telephone," this was "a concern [Corretjer] has at this point." The court took all three motions under advisement.

*Dismissal With Prejudice.*

On January 20, 2016, the compensation court entered an order granting Principal's motion for sanctions and dismissing Corretjer's petition with prejudice. Given its ruling on the motion for sanctions, the court determined that Corretjer's motion for continuance and Principal's third motion to compel were moot.

The compensation court noted that in its orders of October 8 and November 23, 2015 ruling on Principal's previous motions to compel, Corretjer had been advised that a failure to submit to the medical examinations in question could subject his petition to dismissal. The court determined that, in connection with Principal's motion for sanctions, only "vague and cryptic reasons" were advanced by Corretjer for his refusal to attend the court-ordered examinations. Specifically, the court noted Corretjer's claims of anxiety and his counsel's representation in the December 21, 2015 letter that Corretjer was not mentally prepared to proceed with the litigation. The court noted, however, that Corretjer had been able to undergo examinations by his treating physicians, Sanner and Brignoni, but that the court "was not favored with any opinion from either expert or any other care provider touching upon any claimed inability of [Corretjer] to proceed with the litigation." The court stated that it was "naturally left to wonder why [Corretjer] was able to undergo examinations by his health care providers but now claims an inability to attend examinations by [Principal's] experts." The court concluded:

> In the end, the Court was left looking in vain for support for [Corretjer's] claim of an inability to attend the ordered medical examinations. If a scintilla of medical evidence had been offered[,] the present order likely would not have been entered.
>
> Absent some justification for ignoring them, the earlier orders of the Court simply must stand for something. Otherwise, they can be disregarded with impunity. [Principal] has an established right under Nebraska law to engage in discovery [to] include the right to have a claimant examined. The net result of [Corretjer's] non-compliance is foretold.

The court granted Principal's motion for sanctions and dismissed Corretjer's petition with prejudice.

ASSIGNMENT OF ERROR

Corretjer asserts that the compensation court abused its discretion in imposing the sanction of dismissal with prejudice for his discovery violation.

STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Interiano-Lopez v. Tyson Fresh Meats*, 294 Neb. 586, 883 N.W.2d 676 (2016). Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id.*

ANALYSIS

Corretjer asserts that the compensation court abused its discretion in imposing the sanction of dismissal with prejudice for his discovery violation. He does not dispute that he failed to comply with the court's order of November 23, 2015 compelling him to submit to the examination by Cotton, and he concedes that the record "did not necessarily contain compelling medical evidence explaining why he could not attend or the jeopardizing effects that such attendance could have had on his mental or physical health." Brief for appellant at 11. Corretjer argues, however, that the court should have imposed a lesser penalty that would have addressed the court's concerns about the meaningfulness of its orders but still allowed him to seek redress for his work-related injury.

The Nebraska Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence or by any technical or formal rules of procedure. *Interiano-Lopez v. Tyson Fresh Meats, supra*. The compensation court has, however, specifically adopted the discovery rules found in Neb. Ct. R. Disc. §§ 6-301 to 6-337, which permit the court to sanction noncompliance with a discovery order by methods including dismissal of the action. See Neb. Workers' Compensation Ct. R. 4. Specifically, with respect to noncompliance with a discovery order, Neb. Ct. R. Disc. § 6-337(b)(2)(C) provides that if a party "fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just" including an order "dismissing the action or proceeding or any part thereof."

The determination of an appropriate discovery sanction rests within the discretion of the trial court, and an appellate court will not disturb it absent an abuse of discretion. *Hill v. Tevogt*, 293 Neb. 429, 879 N.W.2d 369 (2016). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

"Rule 37 sanctions serve several purposes. First, they punish a litigant or counsel who might be inclined to frustrate the discovery process. Second, they deter those who are tempted to break the rules. Finally, they prevent parties who have failed to meet their discovery obligations from profiting from their misconduct." *Hill v. Tevogt*, 293 Neb. at 436 (citations omitted).

The appropriate sanction under § 6-337 depends on the facts. *Hill v. Tevogt, supra*. Factors which are relevant to sanctions under § 6-337 include the prejudice or unfair surprise suffered by the party seeking sanctions, the importance of the evidence which is the root of the misconduct,

whether the court warned the sanctioned party about the consequences of its misconduct, whether the court considered less drastic sanctions, the sanctioned party's history of discovery abuse, and whether the sanctioned party acted willfully or in bad faith. *Hill v. Tevogt, supra*.

This court has stated that there is a difference between noncompliance with one of the discovery rules and noncompliance with an order of the trial court on a discovery matter, and this difference may impact the allowable sanction. *Pope-Gonzalez v. Husker Concrete*, 21 Neb. App. 575, 842 N.W.2d 135 (2013) (finding dismissal appropriate sanction where plaintiff repeatedly failed to respond to discovery requests despite extended deadlines and warning that failure to comply would subject her to sanctions). Dismissal or default judgment is an appropriate sanction for failing to comply with a discovery order. *Id.* See *Stanko v. Chaloupka*, 239 Neb. 101, 474 N.W.2d 470 (1991) (dismissal may be appropriate sanction for "inexcusably recalcitrant" party).

In this case, Corretjer has so far proven unwilling or unable to attend independent medical examinations requested by Principal. In response to the court's determination that Corretjer did not provide "a scintilla of medical evidence" in support of his claimed inability to attend the ordered medical examinations, Corretjer argues that he did in fact provide medical evidence via the emergency room reports following the seizures he suffered at the time of his deposition and the notes from his December 2015 office visit to Brignoni. While these exhibits provide some evidence that Corretjer suffers from seizures and anxiety, Corretjer provided no medical evidence to explain how either of these conditions have prevented him from attending the defense medical examinations. Despite Brignoni's expressed willingness to provide further assistance, Corretjer apparently did not seek an opinion from her on whether Corretjer could undergo medical examination by Principal's experts. Nor did Corretjer present evidence that he was pursuing such an opinion. And, while Corretjer might not have been able to obtain an appointment with Denton until the end of January, he apparently declined Denton's offer of a telephone appointment prior to that time. Further, a review of Brignoni's report shows that Corretjer had been referred to Denton by Brignoni's predecessor Sanner at some point prior to the December 2015 visit with Brignoni and had not yet followed through on that earlier referral.

In considering the evidence in this case in light of the factors outlined in *Hill v. Tevogt* above, we conclude that the compensation court did not abuse its discretion in granting the sanction of dismissal. Principal was clearly prejudiced by its inability to conduct independent medical examinations and discovery in order to defend against the allegations set forth in Corretjer's petition. The medical examinations presumably would have led to important evidence relevant to Corretjer's claim. The court, in its October and November 2015 orders, warned Corretjer twice that failure to attend the examinations "shall" subject his petition to dismissal. The court's continuances of the trial in an effort to allow for the rescheduled examinations were a tacit provision of less drastic sanctions prior to dismissal. Finally, Corretjer missed several medical examinations showing a pattern of willful disregard of the discovery process and the trial court's orders.

Under these circumstances, dismissal of Corretjer's petition with prejudice was an appropriate sanction under § 6-337. We can find no abuse of discretion by the trial court.

## CONCLUSION

The worker's compensation court did not abuse its discretion in granting the sanction of dismissal of Corretjer's petition. We affirm.

AFFIRMED.